## CRAWLEY vs. RIGGS ET AL.

Where the vendor conveys land by deed, taking the note of the vendee for the purchase money, a mere assignment of the note does not transfer to the assignee the benefit of the vendor's lien upon the land for the payment of the purchase money, (18 *Ark.*, 157)—the lien of the vendor being personal to him, and not assignable unless under some peculiar equitable circumstances. (14 *Ark.*, 634.) But the peculiar equitable circumstances under which the vendor's lien follows the notes in the hands of an assignee do exist, where the assignment is made as collateral security for the notes of the vendor; the assignee, in such case, holding the lien as well for the benefit of the assignor as for himself, is subrogated to all his equities.

*Appeal from Jefferson Circuit Court in Chancery.*

Hon. WM. M. HARRISON, Circuit Judge.

ENGLISH for the appellant.

Riggs had a vendor's lien on the land he sold to Harris to secure the two notes which Harris gave him for the purchase money; and he assigned the two notes to Crawley as collaterals. The appellant seeks by this bill to collect the collaterals by en- forcing Riggs' lien for the benefit of Riggs, and the case stands just as if Riggs himself had filed the bill to enforce the lien.

In *Shall as ad. vs. Biscoe et al.,* 18 *Ark.,* 142, the question whether the lien of the vendor passed with the assignment of the note for the purchase money was fully discussed and decided. On page 162, the court, quoting from a decision of New York, say: "If the note is assigned or transferred to a third person for his benefit, the lien of the vendor is gone forever. The reason is there is no peculiar equity in favor of third persons. But that does not apply where, as in this case, the transfer is only for the purpose of paying the debt of the vendor so far as it may be available, and is therefore for his benefit. There the equity (the vendor's lien) continues." The case quoted from is *Hallock vs. Smith,* 3 *Barbour, S. C. R.,* 272.

The case now before the court falls within this rule. Here the assignment was not in the ordinary course of business, but the notes were assigned as collaterals and are still held as collaterals, for the benefit of Riggs.

McCRACKEN for appellees.

The solicitor for the appellees submits the following points and authorities:

The assignment of the notes for the purchase money did not carry with it the lien on the land in said transcript described, and vest in the appellant the right to foreclose as in his bill is claimed. And hence the demurrer of the said defendant Harris

to the said appellant's bill in the court below was properly sustained, and said bill dismissed for want of equity.    See *Moore & Cail admr. vs. Anders,* 14 *Ark.,* 628; *Pettit et al. vs. Johnson et al.,* 15 *ib.,* 55; *Shall as ad. vs. Biscoe et al.* 18 *Ark.,* 142.

Mr. Justice CLENDENIN delivered the opinion of the court.

The complainant, and appellant, filed his bill in the circuit court in chancery, alleging in substance : that on the 4th of July, 1860, Zachariah Riggs, the intestate of Ann V. Riggs, administratrix, being indebted to W. G. Crawley for a tract of land, executed to W. G. Crawley a writing obligatory for $2,394.64 of that date, payable on the 1st January, 1861, which W. G. Crawley, before the death of Riggs, assigned to J. F. Crawley (the complainant in the bill and appellant in his court:) that the obligation had been duly probated by J. F. Crawley against the estate of Riggs : that Riggs, on the 10th of December, 1859, sold to J. W. Harris a tract of land in Jefferson county for the consideration of $1100 in cash, and $1,341.50 to be paid on the 1st of January, 1861, and a like sum to be paid on the 1st of January, 1862, with interest, which deferred payments were evidenced by the notes of Harris to Riggs, dated and payable as stated : that at the date of the sale, Riggs executed to Harris a deed for the land, specifying on the face of the deed the two notes for the deferred payments, which deed was duly recorded : that Riggs, being so indebted to W. G. Crawley, by the writing obligatory of July 4, 1860, and the lands which he had purchased from Crawley being liable therefor, he some time prior to the 25th December, 1865, to induce W. G. Crawley to release said lands and make a deed therefor, assigned to him the two notes of John F. Harris, it being understood that the notes so assigned as collateral security for the payment of said writing obligatory given by Riggs to William G. Crawley, and that when the same were collected, the money should be applied to the payment of said writing obligatory : that afterwards, when Wm. G. Crawley assigned the writing obligatory of Riggs to John F. Crawley, he also assigned to him the two notes of Harris : that

Harris had paid complainant $740, which had been credited on the writing obligatory of Riggs, and also on the two notes of Harris, and that no other payments had been made.

The prayer of the bill seeks to enforce a lien on the lands sold by Riggs to Harris, for the satisfaction of the balance due on the notes given by Harris for the lands sold to him by Riggs.

Mrs. Riggs, the administratrix of Riggs, answered the bill, admitting it to be true, and praying that after the payment of the writing obligatory of Riggs to W. G. Crawley, and by him assigned to the complainant, the balance due on the notes of Harris should be decreed to her as such administratrix.

Harris demurred to the bill, and the court having sustained the demurrer, Crawley appealed.

There can be no question that if Riggs, the vendor was alive, and had the notes of Harris in his possession, he could enforce the lien upon the lands sold to Harris; so if the notes were in the possession of the personal representatives of Riggs, they could enforce the lien. This court, in the case of *Shall as adr. et al. vs. Biscoe et al.* 18 *Ark.*, 157, on this point, say : "It is very well settled in England and in most of the states of this union, that, in equity, the vendor of land has a lien for the purchase money, not only against the vendee himself and his heirs and other privies in estate, but also against all subsequent purchasers, having notice that the purchase money remained unpaid. The lien exists although there be no special agreement for that purpose, and notwithstanding the vendor conveys the land by deed, and takes the note or bond of the vendee for the purchase money. To the extent of the lien the vendee becomes a trustee for the vendor and his heirs, etc., and all other persons claiming under him with such notice, are treated in the same predicament."

The question then arises: the lien for the purchase money being perfect in Riggs, could he, by the assignment of the notes for the purchase money, assign the lien he had as vendor?

The American decisions on this point are very much in conflict. But this court in the case of *Shall adm. et al. vs. Biscoe et al.*, after

a very full review of the decisions, remark, " that the weight of authority is, that where the vendor conveys the land by deed, taking the note of the vendee for the purchase money, a mere assignment of the note does not transfer to the assignee the benefit of the vendor's lien upon the land for the payment of the purchase money." And in the case of *Moore & Cail, admr. vs. Anders,* 14 *Ark.,* 634, the court say : " The weight of authority, no doubt, is, that the equitable lien of the vendor is personal to him, and is not, unless under some peculiar equitable circumstances, assignable." This being the law we must inquire whether this was an assignment by Riggs to Crawley in the ordinary course of business, which would deprive Crawley of the lien, or whether it was not such a transfer of the notes to Crawley, presenting such peculiar equitable circumstances as would subrogate Crawley to the lien of Riggs upon the land sold to Harris, and whether the equity does not continue.

Riggs, it appears, was indebted to W. G. Crawley, for a tract of land, in the sum of $2,398.64, bearing interest; soon afterwards, Riggs sold a tract of land to Harris, and Harris owed him a balance (evidenced by notes bearing interest for $2,683.00.) Riggs, to get title to his land from Crawley assigned Harris' notes to Crawley as collateral security, and W. G. Crawley assigned both the notes of Riggs and the two notes of Harris to John F. Crawley, and Harris recognizing the transaction paid to J. F. Crawley, the complainant, $740, which was credited on his own notes and also on the note of Riggs.

Riggs could, at any time before his death, and his representatives could, afterwards, have paid his note to Crawley, and have taken back the notes of Harris, and enforced his lien. He had not, according to the bill, absolutely and unqualifiedly parted with the notes; they were collaterals in the hands of Crawley for the payment of Riggs' own debt, and under these circumstances, the equity continued with the notes. And we think that Crawley, the complainant, may well be subrogated to the lien which Riggs would have had in his lifetime, and his representatives

have now, on the payment of the debt of Riggs to Crawley. The complainant is entitled to enforce the lien; it is partly for his benefit, but generally for the benefit of the estate of Riggs; and two suits are not necessary to do that which can be done by one. Equity abhors a multiplicity of suits, and we will not require the complainant to prosecute his claim against the estate of Riggs and after its payment, that Riggs' representative shall proceed to enforce the lien against the land sold to Harris.

Judge Story says: " The lien of the vendor is not confined to himself alone, but in case of his death, it extends to his personal representatives. It may, also, be enforced in favor of a third person, notwithstanding the doubts formerly expressed by Lord Hardwick; as for example, it may be enforced by marshaling assets, in favor of legatees and creditors, and giving the benefit by way of substitution to the vendor, when he seeks payment out of the personal assets of the vendee. *Story's Eq. Jurisprudence, chap.* 33, *Sec.* 1227. And in the case of *Halleck vs. Smith,* 3 *Barb. S. C. R.,* (*N. Y.*) 272, the court say, in referring to a point similar to the one before us, " If the vendor take a note or bond from the vendee, for the purchase money, that is no waiver of the lien, for such instruments are only evidences of the debt. But if the note or bond is transferred to a third person, for his benefit, the security is gone forever. The reason is, that there is no peculiar equity in favor of the third person. But that does not apply where, as in this case, the transfer is only for the purpose of paying the debt of the vendor, so for as it may be available, and is therefore for his benefit. There the equity continues."

We therefore think, from the facts of this case, as shown by the bill, and the authorities we have examined, that the circuit court in chancery erred in sustaining the demurrer to the bill, and its judgment must be reversed, with instructions to overrule the demurrer to the bill, and to permit the defendant Harris to answer if he wishes to do so.